**SOMFY, S.A., Plaintiff–Appellant,**

v.

**SPRINGS WINDOW FASHIONS DIVISION, INC., Design Craft Fabric, Inc., the Home Depot, Inc., and Sears Roebuck & Co., Defendants–Appellees.**

No. 00–1379.

United States Court of Appeals, Federal Circuit.

April 25, 2001.

Before MAYER, Chief Judge, BRYSON and DYK, Circuit Judges.

PER CURIAM.

Somfy, S.A. ("Somfy") appeals the order of the United States District Court for the Northern District of Illinois granting summary judgment that Springs Window Fashions Division, Inc., Design Craft Fabric, Inc., The Home Depot, Inc. and Sears Roebuck & Co. (collectively, "Springs") did not infringe Somfy's United States Patent Number 5,328,113 ('113 patent) directed towards a device for evenly winding the suspension cord of window blinds to ensure that the windings of the cord do not overlap one another. *See Somfy, S.A. v. Springs Window Fashions Div., Inc. et al.,* No. 98–C–7348 (N.D.Ill. March 27, 2000). Because there is a genuine issue of material fact as to whether the accused device infringes under the district court's claim construction, we *reverse-in-part* and *remand.*

We review a district court's grant of summary judgment *de novo. Vanmoor v. Wal–Mart Stores, Inc.,* 201 F.3d 1363, 1365, 53 USPQ2d 1377, 1378 (Fed.Cir.

2000) (citing *Petrolite Corp. v. Baker Hughes, Inc.*, 96 F.3d 1423, 1425, 40 USPQ2d 1201, 1203 (Fed.Cir.1996)). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc). Claim construction is a question of law that we review *de novo. Cybor v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed. Cir.1998) (en banc). Infringement, both literal and under the doctrine of equivalents, is a question of fact. *Insituform Tech., Inc. v. Cat Contracting, Inc.* ., 161 F.3d 688, 692, 48 USPQ2d 1610, 1614 (Fed. Cir.1998).

We also analyze infringement of claims with limitations drafted pursuant to 35 U.S.C. § 112, ¶ 6 (1994) using this two-step method. *IMS Tech. Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429, 54 USPQ2d 1129, 1133 (Fed.Cir.2000). Section 112 paragraph 6 of Title 35 of United States Code provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." If the word "means" appears in a claim element in combination with a function, it is presumed to be a means-plus-function element to which

§ 112, ¶ 6 applies. *Sage Prods., Inc. v. Devon Indus., Inc.* ., 126 F.3d 1420, 1427, 44 USPQ2d 1103, 1109 (Fed.Cir.1997). Nevertheless, "according to its express terms, § 112, ¶ 6 governs only claim elements that do not recite sufficient structural limitations." *Al–Site Corp. v. VSI Int'l*, 174 F.3d 1308, 1318, 50 USPQ2d 1161, 1166 (Fed.Cir.1999) (citing 35 U.S.C. § 112, ¶ 6). Therefore, "the presumption that § 112, ¶ 6 applies is overcome if the claim itself recites sufficient structure or material for performing the claimed function." *Id.* (citations omitted). Claim 1 of the '113 patent describes a winding drum, an auxiliary drum means and "shoulder means on one end of said auxiliary drum means for moving successive cord windings axially away from the shoulder means and onto the auxiliary drum means as the cord windings are formed" (among other limitations). Although it is a close question, both parties concede and the district court correctly held that "shoulder means" is a § 112, ¶ 6 claim limitation because "shoulder" describes a blocking function rather than indicating a specific structure (i.e., step-like raise, sloped raise, or "finger") sufficient to perform this function.

 Construction of a § 112, ¶ 6 limitation includes identifying the claimed function and determining the corresponding structure or act disclosed in the specification. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308, 46 USPQ2d 1752, 1755–56 (Fed.Cir.1998). The district court held, and the parties do not dispute, that the function of this limitation of the invention is to move the cord by blocking ("shouldering") the cord, moving successive cord windings axially away from the shoulder and preventing it from winding beyond the auxiliary drum. Relying on drawings of the preferred embodiments in the specification that do not show any space between

the shoulder and the drum, a statement in the abstract of the patent that the auxiliary drum is "limited by a shoulder," inventor testimony, and dictionary definitions of a shoulder as a "step-like change in the contour [of the drum] . . . ," the court correctly determined that the structure disclosed in the specification to perform this function requires the "shoulder means" to be in contact with the drum.

Somfy argues primarily that the claim language "on the one end" does not require the "shoulder means" to contact the drum because it refers to location along the axis of the drum, rather than physical connection to the drum. While Somfy's argument on this point has merit, the remainder of the extrinsic and intrinsic evidence still requires construing the "shoulder means" to physically contact the drum. Moreover, the prosecution history of the patent offers no assistance in construing this portion of the claim.

The test for literal infringement under § 112, ¶ 6 is first, whether the accused device performs an identical function to the one recited in the claim, and, if so, whether the accused device uses the same structure, materials or acts found in the specification, or their equivalents. *Gen. Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1355, 50 USPQ2d 1910, 1913–14 (Fed.Cir.1999). The test for equivalents is whether the differences are insubstantial (often determined using the reduced tripartite test of whether the accused device performs the identical function (as required by statute), in substantially the same way to reach substantially the same result). *IMS Tech.*, 206 F.3d at 1435–36, 54 USPQ2d at 1138. Evidence of known interchangeability and the importance of the limitation to the invention may be taken into account. *Id.* Whether an accused device or method infringes a claim with a § 112, ¶ 6 limitation (literally or equiva-

lently) is a question of fact. *Id.* at 1430, 54 USPQ2d at 1134. To uphold a summary judgment of non-infringement, we must find that no reasonable juror could have found otherwise. *Id.*

Both the first and the second decisions of the district court held (at least by implication) that the fingers of Springs' device perform the function of blocking the cord to move successive cord windings along the drum. Further, there is no dispute that the Springs device is not structurally identical to that disclosed in the specification. Citing to the Dix testimony and the frictional test results, Somfy argues that a genuine issue of material fact exists as to whether the fixed fingers in the accused device perform this function in the same way as the Somfy invention. It argues that the non-contiguous nature of the Springs finger provides no operational advantage over the Somfy connected rotating shoulder, and that Somfy's invention was fixing the shoulder in relation to the axial movement of the drum. Springs argues that this evidence is not all properly in the record on the motion for summary judgment (although Somfy argues that the Plichon tests would be admissible because the expert deadlines were reset), and that the Springs device directly guides the cord onto the drum while the Somfy invention guides it onto the shoulder.

Nonetheless, even disregarding the Dix declaration and Plichon tests, but drawing all reasonable inferences in favor of Somfy, the testimony of Springs' own witnesses about the operation of its device, the device itself, and the evidence Somfy presented of copying are sufficient to permit a reasonable juror to conclude that the fingers of the Springs device are equivalent to the shoulder means element of the '113 patent. A reasonable juror might conclude that the Springs device operates in the same way as Somfy's by guiding the

cord against the shoulder or finger to move successive windings down the drum, and that the non-contiguous nature of the finger is an insubstantial difference. While the Domel reference may be relevant, it is not dispositive because it employs a slightly different structure than the Springs device. Moreover, while the Springs finger is stationary in that it does not rotate, it is also stationary with respect to the axial movement of the drum, and may therefore be read as an improvement that nonetheless infringes Somfy's claimed invention.

Somfy shall have its costs.